UNITED STATES OF AMERICA
UNITED STATES DISCRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.

| | |
|---|---|
| **LAUREN VINITSKY,** *Plaintiff*, **v.** **MASSACHUSETTS DEPARTMENT OF CORRECTION,** *Defendant.* | **COMPLAINT & DEMAND FOR JURY TRIAL** |

## <u>INTRODUCTION</u>

1.     Defendant violated Plaintiff's right to the free exercise of religion by requiring that, as a condition of her continued employment, she be injected with a product advertised as a COVID-19 vaccine, and (after Defendant had explained that her sincerely held religious beliefs prevented her from being injected with the products) by terminating her employment.

2.     Defendant further discriminated against the Plaintiff based on her pregnancy and pregnancy related medical conditions by requiring that, as a condition of her continued employment, she be injected with a product advertised as a COVID- 19 vaccine, and (after Defendant had explained that her status as a pregnant and then breast feeding mother prevented her from being injected with the products given the lack of scientific research and testing of the vaccine on pregnant, lactating mothers and breastfeeding children so as to make an informed decision as to the risks) by terminating her employment.

3.     Defendant retaliated against the Plaintiff after her engaging in protected activity by requiring that, as a condition of her continued employment, she be injected with a product advertised as a COVID- 19 vaccine and then terminating her employment despite allowing other pregnant and/or breast feeding employees who had not engaged in such activity previously to not

be vaccinated.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5 (f) and 28 U.S.C.

§§ 1331 and 1343 (a).

5.      This Court has supplemental jurisdiction over the state law claims.

6.      Venue is proper under 28 U.S.C. § 1391 because this is the judicial district where a

substantial part of the events giving rise to the claims occurred.

## PARTIES

7.      Plaintiff, Lauren Vinitsky, is an inhabitant of Millis, Massachusetts.

8.      Defendant Department of Correction (DOC) is an agency of the Commonwealth of

Massachusetts and is a person within the meaning of 42 U.S.C. § 2000e (a), and is an employer

within the meaning of 42 U.S.C. § 2000e (b) and of M.G.L. 151B, § 1 (5).

## EEOC AND MCAD CHARGES

9.      Plaintiff filed a timely charge with the United States Equal Opportunity Commission (EEOC)

(Charge No. 16C-2022-018555).  The EEOC issued a right-to-sue notice on October 28, 2024.

Plaintiff brings this case within 90 days of receipt of the EEOC right-to-sue notice.

10.     Plaintiff filed a timely charge with the Massachusetts Commission Against Discrimination

(MCAD) (Docket No. 21BEM03172).  Withdrawal of the MCAD action was submitted in

conjunction with the filing of this Complaint.

11.     All preconditions for filing this lawsuit have been performed or have occurred.

## FACTS

12.    Plaintiff is a Christian.  Being injected with a product advertised as a "COVID-19 vaccine" would be contrary to her faith.

13.    Plaintiff began her employment with Defendant in 2005 as a Correction Officer I.

14.    Plaintiff was promoted to Correction Officer II/Sergeant in 2011.

15.    Starting in 2012 and continuing until her termination in February of 2023, the Plaintiff was employed as a Hearing Officer for the Department of Correction.  While she was promoted to Lieutenant/Correction Officer III in 2018, she continued as a Hearing Officer.

16.    As a Correction Officer III/Hearing Officer, Plaintiff's primary job duties included conducting fair and impartial disciplinary hearings with inmates, drafting and submitting written decisions/findings, conducting training of junior Hearing Officers, and engaging in consultative meetings with the facility Director and other Hearing Officers.  Plaintiff's position was performed at multiple facilities throughout the state and was performed primarily in satellite offices or buildings which did not house any inmates.

17.    The bulk of the Plaintiff's work was performed within the Administrative Offices of the Norfolk Gatehouse Building which was separate and apart from the inmate population.  The Plaintiff had a private office on the second floor of said building.

18.    In conducting disciplinary hearings, the attorneys representing the inmates were given the choice of appearing in person or attending the hearing via telephone.  Most opted to appear by telephone.

19.    The Defendant imposed no vaccination requirement on attorneys, visitors or volunteers entering the facility.

20.    On or about August 19, 2021, Governor Charles D. Baker issued Executive Order 595 "EO 595"), which requires all employees of the Commonwealth's Executive branch to submit proof of full vaccination against COVID-19 by October 17, 2021, as a condition of continued employment.  By way of EO 595, the Governor directed the Human Resources Division to issue a written policy with a procedure to allow "limited exemptions from the vaccination requirement

where a reasonable accommodation can be reached for any employee... who is unwilling to receive COVID-19 vaccination due to a sincerely held religious belief."

21.    Defendant adopted a policy to put into effect EO 595. The policy required employees to be injected with products advertised as "COVID-19 vaccines."

22.    On or about September 27, 2021, Plaintiff requested an exemption on the basis of her religion.

23.    By way of that exemption request, the Plaintiff requested to be exempt from the COVID-19 vaccination requirement due to her sincerely held lifelong Catholic based religious beliefs.

24.    As set forth by Plaintiff in her Exemption Request Form, these beliefs include but are not limited to:  the belief that "God heals all" and "decides protection during an illness or pandemic"; that because vaccines were developed or tested on cell lines from abortion, to inject oneself with a product of abortion is in direction conflict with Plaintiff's beliefs based on the teachings of the Bible and her church which believes all abortion is murder; and that all treatments of ailments should be based in nature and in accordance with the concept of natural birth and natural death, consistent with Catholic teachings.

25.    On or about October 7, 2021, Plaintiff requested a medical exemption on the basis of pregnancy.

26.    As set forth by Plaintiff in her Exemption Medical Request Form, Plaintiff articulated that she was "currently pregnant and high risk.  The available COVID-19 vaccines have not underdone sufficient testing to demonstrate safety in pregnant women and safety to unborn baby."

27.    On or about October 15, 2021, Defendant denied Plaintiff's Religious Exemption on the basis that Plaintiff "represented that [her] objection was based on the vaccinations containing fetal cell tissue.  The vaccines do not contain any fetal cells and therefore [Plaintiff has] not established

that taking the vaccine would conflict with [her] stated religious beliefs, practices, or observances.

28.    The Defendant further alleged that accommodating the Plaintiff's Religious Exemption Request would cause an undue hardship.

29.    The Defendant's basis for denial misstated the Plaintiff's articulated explanation of the conflict between her religious beliefs and the COVID-19 vaccine.  The Plaintiff made no assertion that her objection to the vaccine was based on it containing fetal cell tissue.

30.    The Defendant's claim of undue hardship was set forth generically and without any reference to the Plaintiff's job as a Hearing Officer.

31.    Upon receipt of Defendant's denial of her Religious Exemption Request, Plaintiff requested information as to how to appeal said denial.  Defendant never responded.

32.    On December 8, 2021, Defendant denied Plaintiff's Medical Exemption Request while at the same time offering an accommodation to the Plaintiff in the form of utilizing leave time or leave without pay and Paid Family Medical Leave (PFMLA) or Family Medical Leave (FMLA)/Enhanced Family Friendly Benefits during the period of her pregnancy.

33.    The Defendant further alleged that accommodating the Plaintiff's Medical Exemption Request would cause an undue hardship.

34.    The Defendant's claim of undue hardship was again set forth generically and without any reference to the Plaintiff's job as a Hearing Officer.

35.    In or about December of 2021, and following Defendant's denials of both her Religious and Medical Exemption Requests, Plaintiff initiated her complaints with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission. Those claims were assigned EEOC Charge No. 16C-2022-018555 and MCAD Docket No. 21BEM03172 respectively.

36.    Following the denials of both her religious and medical exemption requests, Plaintiff

continued to work unvaccinated from October 17, 2021 until April of 2022 when she went out on maternity leave.  During this period she took all of the same COVID precautions as her fellow workers but for the vaccine.

37.    The Plaintiff returned from her maternity leave on or about January of 2023.

38.    For the majority of the Plaintiff's more than 9 months of maternity leave, Defendant did not make any inquiry of her regarding her vaccination status.

39.    In or about December of 2022, while speaking to Plaintiff about her upcoming promotion to Captain which was set to occur in mid-January 2023 (Plaintiff was number 1 on the Civil Service Promotional List), Defendant's Human Resource Department inquired about the Plaintiff's vaccination status.

40.    Upon being told by Plaintiff that she would be filing another Exemption Request based on her status as a breast feeding mother, Defendant, before said request was even submitted, reviewed, and without any interactive process being implemented, rescinded its offer of promotion to Captain and informed Plaintiff verbally that said request would be denied.

41.    On or about January 9, 2023, Plaintiff formally requested another Medical Exemption on the basis of pregnancy and her status as a breast feeding mother.

42.    On January 10, 2023, Defendant, before deciding Plaintiff's Exemption Request or engaging in any type of interactive process, suspended Plaintiff without pay for 5 days because she had not been injected with a product advertised as a COVID-19 vaccine, and scheduled a compliance hearing for January 17, 2023, to determine whether she had been injected.

43.    As of January 10, 2023, of the 626 Religious Exemption Requests received, the Defendant had denied 602 of them.  The other 24 individuals were vaccinated prior to a decision being rendered.

44.    As of January 10, 2023, of the 65 Medical Exemption Requests received, the Defendant had approved 1, denied 45, granted extensions for compliance 10 times, and had 9 individuals come into compliance before a decision was rendered.

45.    On January 19, 2023, Defendant denied Plaintiff's second medical exemption request. Once again it claimed that accommodating the Plaintiff would impose an undue hardship.

46.    On January 23, 2023, Defendant suspended Plaintiff without pay for 10 days because she had not been injected with a product advertised as a COVID-19 vaccine.

47.    On February 7, 2023, Defendant terminated Plaintiff's employment because she had not been injected with a product advertised as a COVID-19 vaccine.

48.    At the time Defendant denied Plaintiff's second Medical Exemption Request, suspended her for five days, suspended her for 10 days and then removed her from her employment between January – February 2023, the Defendant was allowing at least one co-worker of the Plaintiff who had also just returned to work following a maternity leave to work without being subjected to discipline due to her being unvaccinated.  By information and belief, this person had not previously filed an MCAD or EEOC complaint against the Defendant.

49.    In denying Plaintiff's request the Defendant claimed that providing an accommodation would cause an undue hardship because there is no reasonable accommodation that would enable her to perform the essential functions of her job.

50.    In fact, numerous reasonable accommodations existed which the Defendant refused to consider.  For example, the Plaintiff could have agreed to test for Covid regularly, wear a mask and practice social distancing, perform her job remotely or via video conferencing, or been given temporary alternative work.

51.    As stated above, Plaintiff had a dedicated private office where she could perform all

of her essential job functions as a Hearing Officer.

52.    Disciplinary hearings could easily be done fully remote or fully telephonically.  As stated above, attorneys were already almost exclusively appearing by telephone during this period.

53.    Similarly, meetings with the Director or with junior Hearing Officers could be done telephonically or via video conferencing.

54.    Written decisions or findings of fact could be drafted remotely or from within the Plaintiff's private office.

55.    Moreover, accommodations were made all day every day for the numerous visitors and attorneys who come and go from the Defendant's numerous facilities throughout the state.

56.    Proof of vaccination status was not a requirement for members of the public to enter the Defendant's various facilities throughout the state.  Instead, the Defendant simply requests that those who were unvaccinated wear a mask.

57.    Granting Plaintiff's request would not have caused Defendant undue hardship because the products advertised as COVID-19 vaccines produced by Johnson & Johnson, Moderna, and Pfizer did not prevent recipients from contracting and transmitting COVID-19.

58.    On December 20, 2021, the Centers for Disease Control stated that, "CDC expects that anyone with Omicron [the latest variant of COVID-19] infection can spread the virus to others, even if they are vaccinated or don't have symptoms."[1]

59.    According to the results of the drug trials that Pfizer conducted in 2020 in connection with its "vaccine," the absolute risk reduction (the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after receiving the drug) was 0.84%. Figures from the Massachusetts Department of Public Health (DPH) figures show that since at

least February 2022 the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated." DPH figures show that by mid-July 2022 more than 3,000 "fully vaccinated" people in Massachusetts had died from COVID-19.

60.     The products advertised as "COVID-19 vaccines" do not prevent recipients from catching, spreading, getting sick from, and dying from COVID-19. Permitting Plaintiff to continue working without being injected with these products would not have caused Defendant undue hardship. This was clear at the time Defendant adopted its policy and enforced it against Plaintiff.

61.     On August 23, 2021, the FDA approved Pfizer-BioNTech's product marketed as Comirnaty, which the FDA described as "a monovalent COVID-19 vaccine that is authorized for emergency use to prevent COVID-19."[2] On September 23, 2021, the FDA published its Review Memorandum, which states: "COMIRNATY is a vaccine indicated for active immunization to prevent coronavirus disease 2019 (COVID-19) caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) in individuals 16 years of age and older."[3] With regard to prevention, as set forth above, the actual risk reduction, i.e. the reduction of the risk that a recipient would have a symptomatic positive test for COVID-19 after being injected with the product, was 0.84%. Even though it claimed that the product would prevent COVID-19, the FDA made no claims about for how long it might do so:

> **How long will Comirnaty provide protection?**
>
> Data are not yet available to inform about the duration of protection that the vaccine will provide.[4]

62.     The EUA Review Memorandum for the Moderna product issued on November 30, 2020, states that "severe adverse reactions occurred in 0.2% to 9.7% of participants." Nevertheless, "there is no adequate, approved, and available alternative to the product for preventing COVID-

19 caused by SARS-CoV-2... The review team therefore recommends issuance of an EUA for use of the Moderna COVID-19 Vaccine for active immunization to prevent COVID-19 caused by SARS-CoV-2 in individuals 18 years of age and older."[5]  The FDA noted various adverse reactions to the Janssen product, including peripheral neuropathy in 0.21% of the study participants.[6]

63.    Data from Vaccine Adverse Events Reporting System (VAERS) show 1,350,950 reports of adverse events for all age groups injected with the products advertised as COVID-19 vaccines, including 29,635 deaths and 246,676 serious injuries.

64.    The number of prominent people who have received the products advertised as "vaccines" and "boosters" and gone on to catch COVID-19 makes the reality difficult to ignore. For example:

65.    On August 19, 2021, three U.S. Senators (John Hickenlooper of Colorado, Angus King of Maine, and Roger Wicker of Mississippi) announced that they had tested positive for COVID-19.  All three had been injected with products advertised as COVID-19 vaccines.  Senator King stated: "While I am not feeling great, I'm definitely feeling much better than I would have without the vaccine."[7]  Senator Hickenlooper said: "I'm grateful for the vaccine (and the scientists behind it) for limiting my symptoms and allowing us to continue our work for Colorado."[8]  Senator Wicker tested positive again in February 2022 and for a third time in June 2022.[9]

66.    On October 19, 2021, the Department of Homeland Security announced that Secretary Alejandro Mayorkas had tested positive for COVID-19, describing him as "fully vaccinated" and experiencing "only mild congestion."[10]

67.    On December 19, 2021, Senator Elizabeth Warren and Senator Cory Booker both announced that they had tested positive for COVID-19.  Senator Warren tweeted: "Thankfully, I

am only experiencing mild symptoms & am grateful for the protection provided against serious illness that comes from being vaccinated & boosted." Senator Booker tweeted: "I'm beyond grateful to have received two doses of vaccine and, more recently, a booster – I'm certain that without them I would be doing much worse."[11]

68.    On January 2, 2022, the Department of Defense announced that Secretary Lloyd Austin had tested positive for COVID-19. Secretary Austin stated:

> As my doctor made clear to me, my fully vaccinated status — and the booster I received in early October — have rendered the infection much more mild than it would otherwise have been. And I am grateful for that.[12]

69.    On August 15, 2022, the Defense Department announced that Secretary Austin had tested positive for COVID-19 again and was (again) experiencing mild symptoms. Secretary Austin stated;

> Now, as in January, my doctor told me that my fully vaccinated status, including two booster shots, is why my symptoms are less severe than would otherwise be the case... The vaccines work and will remain a military medical requirement for our workforce.[13]

70.    On March 13, 2021, former President Barack Obama announced that he had tested positive for COVID-19, stating: "Michelle and I are grateful to be vaccinated and boosted."[14]

71.    On March 31, 2022, William Burns (Director of the Central Intelligence Agency) tested positive for COVID-19.  The Wall Street Journal quoted the CIA as stating that Mr. Burns was fully vaccinated and boosted" and "experiencing mild symptoms."[15]

72.    On April 6, 2022, the Department of Justice announced that Attorney General Merrick Garland had tested positive for COVID-19.  According to the press release, "the Attorney General is fully vaccinated and boosted."[16]

73.    The same day (April 6, 2022) the Department of Commerce announced:

> Today, after experiencing mild symptoms, Secretary [Gina] Raimondo tested positive for COVID using an at-home antigen test. She is fully-vaccinated and boosted, and she is confident that the vaccine has prevented her from

experiencing more significant symptoms.[17]

74.    On April 7, 2022, House Speaker Nancy Pelosi tested positive for COVID-19.  Her spokesperson described her as "fully vaccinated and boosted, and is thankful for the robust protection the vaccine has provided."[18]

75.    On April 9, 2022, the Department of Agriculture released a statement that Secretary Tom Vilsack had tested positive for COVID-19.  It described him as "fully vaccinated and boosted."[19]

76.    On April 26, 2022, the White House announced that Vice President Kamala Harris had tested positive for COVID-19.  According to PBS:

> Harris, 57, received her first dose of the Moderna COVID-19 vaccine weeks before taking office and a second dose just days after Inauguration Day in 2021. She received a booster shot in late October and an additional booster on April 1.[20]

77.    On April 28, 2022, Maine Governor Janet T. Mills announced that she had tested positive for COVID-19. Her office stated: "The Governor is fully vaccinated and has received two boosters – with the second booster dose being administered on April 8, 2022 – providing her with the strongest level of protection against serious disease or hospitalization."[21]

78.    On May 4, 2022, Secretary of State Anthony Blinken tested positive for COVID-19.  The State Department press release described him as "fully vaccinated and boosted against the virus and is experiencing only mild symptoms."[22]

79.    On May 8, 2022, Governor Kathy Hochul of New York tested positive for COVID-19. She tweeted, "Today I tested positive for COVID-19. Thankfully, I'm vaccinated and boosted, and I'm asymptomatic."[23]  The vaccinated Mayor of New York City, Eric Adams, had tested positive the previous month.  On September 20, 2022, Mayor Adams said, "I'm thrilled to roll up my sleeve and get boosted and encourage all eligible New Yorkers to do the same."[24]On May

9, 2022, Susan Rice, President Biden's domestic policy advisor announced that she had tested positive for COVID-19, and stated: "I'm feeling fine and grateful to be vaccinated and double boosted."[25]

80.    On May 16, 2022, the office of Delaware Governor John Carney announced that he had tested positive for COVID-19: "Governor Carney is vaccinated and double boosted."[26] Governor Carney said that he was experiencing "mild symptoms."[27]

81.    On June 1, 2022, Labor Secretary Marty Walsh tested positive for COVID-19 and stated that he was experiencing "mild symptoms and was "grateful to be both vaccinated and boosted."

82.    The same day Interior Secretary Deb Haaland tested positive for COVID-19 and stated, "I feel fine and am grateful to be fully vaccinated and twice boosted."[28]

83.    On June 6, 202, Transportation Secretary Pete Buttigieg ("vaccinated and boosted") tested positive for COVID-19 and said that he was "experiencing mild symptoms."[29]

84.    On June 13, 2022, the Department of Health & Human Services announced that Secretary Xavier Beccera had tested positive for COVID-19 again.  The department's press release described him as "fully vaccinated and boosted against COVID-19 and experiencing mild symptoms." [30]  He had previously tested positive for COVID-19 a little over a month before, on May 18, 2022, when the department's press release stated:

> This morning in Berlin, ahead of G7 meetings for health ministers, U.S. Health and Human Services Secretary Xavier Becerra tested positive for COVID-19 after taking a PCR test. He is fully vaccinated and boosted against COVID-19, and is experiencing mild symptoms.[31]

85.    On June 15, 2022, the National Institutes for Health announced that Dr. Anthony Fauci (director of the National Institutes of Allergy and Infectious Diseases) had caught COVID-19: "He is fully vaccinated and has been boosted twice. He is currently experiencing mild

symptoms."[32]  Dr. Fauci took Paxlovid and promptly caught COVID-19 again.[33]

86.    On June 20, 2022, North Carolina Governor Roy Cooper announced that he had tested positive for COVID-19: "I'm feeling fine. Thanks to vaccinations and boosters, my symptoms are very mild."[34]  The previous July, Governor Roy had issued Executive Order 224, which ordered mandatory injection for State employees or, in the alterative weekly testing for COVID-18, and stated: "The most effective protection against the Delta variant-or against any form of COVID-19-is getting vaccinated. Vaccinations also protect the people around us from sickness and death."

87.    On July 10, 2022, Senate Majority Leader Charles Schumer of New York caught COVID-19.  His spokesperson stated: "The Leader is fully vaccinated and double boosted, and has very mild symptoms."[35]

88.    On July 11, 2022, Senator Richard Blumenthal tested positive for COVID-19 and stated, "I'm not experiencing symptoms & am thankful to be fully vaccinated & boosted."[36]President Joe Biden — vaccinated and double-boosted[37] — recovered from another bout of COVID-19 last summer.  He received his second booster dose on Wednesday, March 30, 2022, and tested positive for COVID-19 on July 21, 2022, just 15 weeks later.  The White House press release dated July 21, 2022, stated:

> This morning, President Biden tested positive for COVID-19.  He is fully vaccinated and twice boosted and experiencing very mild symptoms.  He has begun taking Paxlovid.

He took Paxlovid, and (like Dr. Fauci) caught COVID-19 again.[38]  It is also common knowledge that First Lady Jill Biden — twice "vaccinated" and twice "boosted,' according to her spokesperson — has also caught COVID-19.[39]

89.    The "vaccinated" and thrice-boosted Canadian Prime Minister, Justin Trudeau, has caught COVID-19 twice (so far).  He was "vaccinated" on April 23, 2021, received a booster on

January 4, 2022, caught COVID-19 later that month, received a second shot in April 2022, caught COVID-19 for the second time in June, then got a third "booster" shot in July.

90.      On August 8, 2022, Michigan Governor Gretchen Whitmer stated that she had tested positive for COVID-19: "Thankfully, I am only experiencing mild symptoms after being fully vaccinated and twice boosted."[40]  Nine months earlier, on the occasion of receiving one of her booster shots, Governor Whitmer had stated: "The three safe, effective vaccines continue to be our best shot at beating COVID-19."[41]

91.      On August 25, 2022, New Mexico Governor Lujan Grisham announced that she had tested positive for COVID-19: "I am very grateful to be experiencing only mild symptoms after being fully vaccinated and twice boosted against COVID-19."[42]

92.      On September 6, 2022, Senator Jackie Rosen of Nevada announced that she had tested positive for COVID-19.  Her office stated that she was experiencing "mild symptoms" and was "thankful to have been fully vaccinated and boosted to protect against severe illness."[43]

93.      On September 27, 2022, another Cabinet member, Michael Regan (Administrator of the Environmental Protection Agency) posted a Tweet stating that he had tested positive for COVID-19, was experiencing "mild symptoms," and was "grateful to be vaccinated and boosted."[44]

94.      CDC director Rochelle Walensky tested positive for COVID-19 on October 22; the CDC announced that Walensky was "up to date with her vaccines."[45]  This came approximately one month after she was injected with the bivalent product.  On the day of her injection, ABC quoted Walensky as saying:

> All the data from this new bivalent vaccine have demonstrated that it will protect you against — more likely protect you — against the strains that we have circulating right now, those Omicron BA.5 strains, as well as keep you well protected, because we've seen that some of that protection can wane over time

> So, we are really encouraging everybody to roll up their sleeves and get this updated bivalent vaccine.[46]

Just four weeks after her bivalent-booster injection, Walensky caught COVID-19.  Then she took Paxlovid and caught it again.[47]

95.    On November 1, 2022, the Department of Education announced that Education Secretary Miguel Cardona had caught COVID-19.  The department's press release described him as "fully vaccinated and boosted against COVID-19 and experiencing mild symptoms."[48]

96.    On November 7, 2022, FDA Commissioner Robert M. Califf tested positive for COVID-19.  The FDA announced, "He is up to date on vaccines against COVID-19 and is experiencing mild symptoms."[49]

97.    On November 17, 2022, Colorado Governor Jared Polis tested positive for COVID-19.  His office stated, "The Governor is fully vaccinated, is asymptomatic, and will be working from home with his full schedule until he is no longer contagious (for five days if he remains asymptomatic)."[50]  In December 2021, Governor Polis had declared that "unvaccinated" people who catch COVID-19 have only themselves to blame ("it's their own darn fault"), a statement he later supplemented by saying that unvaccinated people "are often the victims of misinformation."[51]

98.    On November 20, 2022, Oregon Governor Kate Brown tested positive for COVID-19.[52]  She tweeted:

> After returning from Vietnam, Dan and I have tested positive for COVID-19. We are recuperating at home and, while this changes our Thanksgiving plans, we are grateful for effective vaccines and boosters that are helping ensure our symptoms don't become serious.

99.    On January 11, 2023, U.S. Senator from Nevada, Cortez Masto tweeted, "This afternoon, I received a positive COVID-19 test result.  I'm experiencing mild symptoms and am grateful for the protection my vaccinations have provided."[53]

100.    On January 17, 2023, Governor Jim Justice of West Virginia tested positive for COVID-19 for the second time.  His announcement states, "The Governor, who is fully vaccinated and boosted, is experiencing mild symptoms and is isolating at home."[54]

101.    On January 18, 2023, Jerome Powell, Chair of the Federal Reserve, tested positive for COVID-19.  The announcement state, "Chair Powell is up to date with COVID-19 vaccines and boosters."[55]

102.    The inefficacy of the products is something that public health officials are now acknowledging publicly.  For example, Dr. Deborah Birx, former White House Coronavirus Response Coordinator, stated: "I knew these vaccines were not going to protect against infection and I think we overplayed the vaccines."[56]  In her book, Dr. Birx wrote:

> Reviewing data from around the world both in the vaccinated and the unvaccinated in late 2020 into early 2021 painted a clearer picture.  The immunity induced after natural infection waned... Natural infection immunity waned and reinfection was not only visible but increasingly common.  Vaccines created to mimic this immunity will also wane, lessening the level of protection against infection.  So even the vaccinated could contribute to community spread.  It wasn't just the unvaccinated who were responsible for ongoing transmission of the virus... The harsh reality was that silent spread could occur even among the vaccinated.  It is normal and expected that our neutralizing antibodies wane."[57]

103.    As former CDC director Dr. Tom Frieden stated, "protection against infection through vaccination is something of a flash-in-the-pan phenomenon."  Dr. Anthony Fauci now concedes that vaccine-induced immunity "isn't durable":

> "We know that people get infected and then get reinfected. And people get vaccinated, and they get infected. So, immunity isn't measured in decades or lifetimes. It's measured in several months."[58]

104.    Acknowledging this reality, the CDC changed its COVID-19 guidance in August 2022, so that its prevention recommendations "no longer differentiate based on a person's vaccination status."[59]  The CDC now concedes that the products advertised as COVID-19 vaccines do not prevent recipients from catching, getting sick from, and spreading COVID-19.

105.    Figures from the Massachusetts Department of Public Health (DPH) figures show that since at least February 2022 the majority of people hospitalized in Massachusetts for COVID-19 have been "fully vaccinated."

106.    Massachusetts DPH figures show that by mid-July 2022 more than 3,000 "fully vaccinated" people in Massachusetts had died from COVID-19.  The Massachusetts DPH categorizes individuals as "fully vaccinated" if they have received the number of doses required to complete the COVID-19 vaccine series for their age and all of these doses have been reported to the Massachusetts Immunization Information System. In mid-July 2022 the Massachusetts DPH stopped publishing the number of COVID-19 breakthrough cases, i.e. people who were injected with the products and then caught the disease. The DPH website states "data on vaccine breakthrough cases in Massachusetts are no longer being updated."  It does not say why.

107.    The latest — and apparently final — weekly report on COVID-19 cases among "fully vaccinated" individuals states that 11.4% of "fully vaccinated" people have caught COVID-19 after becoming "fully vaccinated":

•    As of July 2, 2022 there were 5,408,359 fully vaccinated people and there were 617,337 cases in vaccinated people

•    10,121 of those 617,337 cases resulted in hospitalization and 3,213 cases resulted in death based on information reported to date[60]

DPH's responses to public records requests show that the number of breakthrough cases in the period June 26-September 3, 2022, was 58,199.  Of the 5,555,220 people in Massachusetts that DPH classifies as "fully vaccinated" at least 675,000 (more than 12%) are recorded as having subsequently caught COVID-19.

108.    Below the figures in the weekly report, the DPH includes this note about undercounting both of cases and hospitalizations:

Identification of cases in vaccinated people relies on matching data between the

system of record for cases and vaccinations. The number of cases in vaccinated people may be undercounted due to discrepancies in the names and dates of birth of individuals, resulting in an inability to match records across systems. Hospitalization data is likely also undercounted as identification and reporting of hospitalized cases relies on that information being obtainable by case investigators through patient interview.

109.    For most people who display some symptoms of COVID-19, those symptoms are mild (e.g. sore throat, slight cough, and runny nose) and do not require a visit to a healthcare provider. If a person with COVID-19 does not report the infection to a healthcare provider, nobody enters the case into a healthcare provider's database, and it does not appear in the DPH figures.

110.    Accordingly, the DPH case count of 617,337 "fully vaccinated" people who subsequently caught COVID-19 excludes those who do not report the fact to a healthcare provider.  It also excludes people who were injected with the products but caught COVID-19 within the 14-day period prior to them becoming "fully vaccinated" according to the Department's definition of that term.

111.    Despite the fact that it was already clear that the products advertised as COVID-19 vaccines do not prevent recipients from contracting and transmitting COVID-19, Defendant required that in order to keep her job Plaintiff be injected with the products.

112.    As of the times relevant to this matter, the products advertised as COVID-19 vaccines had not been tested on pregnant or lactating women.  As set forth in FDA briefing documents regarding the Pfizer, Moderna and Janssen vaccines, "There are currently insufficient data to make conclusions about the safety of the vaccine un subpopulations such as . . . pregnant and lactating individuals and their infants. . ."[61]

113.    By early of 2023 it was common knowledge that the COVID-19 pandemic was "over" and the health emergency was nearing an end.

114.    On January 30, 2023 President Biden stated that the COVID-19 pandemic is "over" and the public health emergency would end in May [2023].[62]

115.    On March 15, 2023, Governor Maura Healey issued Executive Order No. 607 which declared that the public health emergency stemming from the COVID-19 pandemic would end of May 11, 2023 at which time Executive Order 595 would be rescinded and so too would the vaccine mandate.[63]

## CLAIM FOR RELIEF

### COUNT 1

### Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a)

### DOC discriminated against Plaintiff on the basis of her religion

116.  Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

117.  Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

118.    Plaintiff informed Defendant of the conflict.

119.  Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely denying that her beliefs are religious, denying the sincerity of her beliefs, inducing her to renounce her beliefs, rescinding her promotion, threatening to discipline her, disciplining her, threatening to terminate her employment, and terminating her employment.

120.  Defendant discriminated against Plaintiff on the basis of her religion (Catholic) in violation of 42 U.S.C. § 2000e-2(a) as follows:

121.  Defendant failed to engage with Plaintiff in a meaningful interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

122.  Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

123.  Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

124.  Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

125.  Defendant discriminated against Plaintiff on the basis of her religion in violation of the Civil Rights Act, Section 703 (a) of Title VII, 42 U.S.C. § 2000e-2(a).

126.   As a result of Defendant's acts and omissions, Plaintiff has suffered harm.


**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

A.     Award Plaintiff damages (including emotional distress), plus her costs and her reasonable attorney's fees;

B.     Award Plaintiff back pay and front pay, and all other lost compensation and benefits, including pension;

C.     Award punitive damages; and

D.     Order such other and further relief as the Court deems just and appropriate.


COUNT II

M.G.L. Chapter 151B, Section 4

DOC discriminated against Plaintiff on the basis of her religion

127.  Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

128. Plaintiff sincerely possessed a bona fide religious belief that conflicted with an employment requirement, namely Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

129.    Plaintiff informed Defendant of the conflict.

130. Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her conflicting religious belief, namely denying that her beliefs are religious, denying the sincerity of her beliefs, inducing her to renounce her beliefs, rescinding her promotion, threatening to discipline her, disciplining her, threatening to terminate her employment, and terminating her employment.

131. Defendant discriminated against Plaintiff on the basis of her religion (Catholic) in violation of M.G.L. Chapter 151B, Section 4, as follows:

132. Defendant failed to engage with Plaintiff in a meaningful interactive process in efforts to reasonably accommodate her religious beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

133. Defendant failed to adequately attempt to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

134. Defendant failed to reasonably accommodate Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines.

135. Accommodating Plaintiff's sincerely held religious observance, practice, and beliefs that prohibit her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

136. Defendant discriminated against Plaintiff on the basis of her religion in violation of

M.G.L. Chapter 151B, Section 4.

137.    As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

E.    Award Plaintiff damages (including emotional distress), plus her costs and her reasonable attorney's fees;

F.    Award Plaintiff back pay and front pay, and all other lost compensation and benefits, including pension;

G.    Award punitive damages; and

H.    Order such other and further relief as the Court deems just and appropriate.

<u>COUNT III</u>

<u>Title VII, 42 U.S.C. § 2000e et seq. as amended by the Pregnancy Discrimination Act, The Pregnant Workers Fairness Act and the Americans with Disabilities Act</u>

<u>DOC discriminated against Plaintiff on the basis of her pregnancy and pregnancy related conditions</u>

138.  Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

139.  Between October 2021 and her termination on February 7, 2023 plaintiff was pregnant and/or was affected by various pregnancy related medical conditions which required accommodation with respect to Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

140.  Plaintiff informed Defendant of the need for accommodation through the submission of two separate Medical Exemption Requests.

141.  Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her pregnancy and pregnancy related medical

conditions by forcing her to choose between her health and the employment requirement, forcing her to choose between her baby's health and the employment requirement, rescinding her promotion, threatening to discipline her, disciplining her, threatening to terminate her employment, and terminating her employment.

142.   Defendant discriminated against Plaintiff on the basis of her pregnancy and her pregnancy related medical conditions in violation of the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act and/or the Americans with Disabilities Act as follows:

143.   Defendant failed to engage with Plaintiff in a meaningful interactive process in efforts to reasonably accommodate her pregnancy and her pregnancy related medical conditions that precluded her from being injected with the products advertised as COVID-19 vaccines.

144.   Defendant failed to adequately attempt to reasonably accommodate Plaintiff's her pregnancy and her pregnancy related medical conditions that precluded her from being injected with the products advertised as COVID-19 vaccines.

145.   Accommodating Plaintiff's pregnancy and her pregnancy related medical conditions that precluded her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

146.   Defendant discriminated against Plaintiff on the basis of her pregnancy and her pregnancy related medical conditions in violation of the Pregnancy Discrimination Act, the Pregnant Workers Fairness Act and/or the Americans with Disabilities Act.

147.    As a result of Defendant's acts and omissions, Plaintiff has suffered harm.


**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

A.    Award Plaintiff damages (including emotional distress), plus her costs and her

reasonable attorney's fees;

B.    Award Plaintiff back pay and front pay, and all other lost compensation and benefits, including pension;

C.    Award punitive damages; and

D.    Order such other and further relief as the Court deems just and appropriate.

COUNT IV

M.G.L. Chapter 151B, Section 4 – Pregnant Workers Fairness Act

DOC discriminated against Plaintiff on the basis of her

pregnancy and pregnancy related conditions

148.  Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

149.  Between October 2021 and her termination on February 7, 2023 plaintiff was pregnant and/or was affected by various pregnancy related medical conditions which required accommodation with respect to Defendant's requirement that Plaintiff be injected with a product advertised as a COVID-19 vaccine.

150.  Plaintiff informed Defendant of the need for accommodation through the submission of two separate Medical Exemption Requests.

151.  Defendant took adverse employment decisions against Plaintiff for her not complying with the employment requirement because of her pregnancy and pregnancy related medical conditions by forcing her to choose between her health and the employment requirement, forcing her to choose between her baby's health and the employment requirement, rescinding her promotion, threatening to discipline her, disciplining her, threatening to terminate her employment, and terminating her employment.

152.  Defendant discriminated against Plaintiff on the basis of her pregnancy and her pregnancy related medical conditions in violation of M.G.L. Chapter 151B, Section 4, as

follows:

153.  Defendant failed to engage with Plaintiff in a meaningful interactive process in efforts to reasonably accommodate her pregnancy and her pregnancy related medical conditions that precluded her from being injected with the products advertised as COVID-19 vaccines.

154.  Defendant failed to adequately attempt to reasonably accommodate Plaintiff's her pregnancy and her pregnancy related medical conditions that precluded her from being injected with the products advertised as COVID-19 vaccines.

155.  Accommodating Plaintiff's pregnancy and her pregnancy related medical conditions that precluded her from being injected with the products advertised as COVID-19 vaccines would not have caused Defendant undue hardship.

156.  Defendant discriminated against Plaintiff on the basis of her pregnancy and her pregnancy related medical conditions in violation of M.G.L. Chapter 151B, Section 4.

157.   As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Honorable Court:

A.    Award Plaintiff damages (including emotional distress), plus her costs and her reasonable attorney's fees;

B.    Award Plaintiff back pay and front pay, and all other lost compensation and benefits, including pension;

C.    Award punitive damages; and

D.    Order such other and further relief as the Court deems just and appropriate.

COUNT V

Retaliation

DOC retaliated against Plaintiff on the basis of her protected activity

158.  Plaintiff repeats and incorporates by reference the factual allegations in the preceding paragraphs.

159.   Plaintiff engaged in protected activity starting in or about December of 2021 when following Defendant's denials of both her Religious and Medical Exemption Requests, Plaintiff initiated her complaints with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.  Those claims were assigned EEOC Charge No. 16C-2022-018555 and MCAD Docket No. 21BEM03172 respectively.

160.   Defendant was aware of the Plaintiff's protected activity as it was actively defending both claims in the administrative process.

161.   In January and February of 2023, Defendant took retaliatory adverse action against Plaintiff by denying her second Medical Exemption Request, rescinding her promotion, threatening to discipline her, disciplining her, threatening to terminate her employment, and terminating her employment.

162.   At the time Defendant denied Plaintiff's second Medical Exemption Request, suspended her for five days, suspended her for 10 days and then removed her from her employment between January – February 2023, the Defendant was allowing at least one co-worker of the Plaintiff who was pregnant to continue working without being subjected to discipline due to her being unvaccinated.  By information and belief, this person had not previously filed an MCAD or EEOC complaint against the Defendant.

163.  Defendant retaliated against Plaintiff on the basis of protected activity violation of 42 U.S.C. § 2000e et seq. and M.G.L. Chapter 151B.

164.    As a result of Defendant's acts and omissions, Plaintiff has suffered harm.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Honorable Court:

I.    Award Plaintiff damages (including emotional distress), plus her costs and her reasonable attorney's fees;

J.    Award Plaintiff back pay and front pay, and all other lost compensation and benefits, including pension;

K.    Award punitive damages; and

L.    Order such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38 and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

Respectfully Submitted
Lauren Vinitsky
By Her Attorney:

*/s/ Marc J. Levy*
Marc J. Levy, Esquire
215 Boston Post Road
Building B, Suite 3
Sudbury, MA 01776
BBO# 644826
Tel. (508) 359-8600
December 11, 2024        Email: marclevy@marclevyesq.com

Endnotes

[1] "Omicron Variant: What You Need to Know" https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html

[2] https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/pfizer-biontech-covid-19-vaccines#comirnaty

[3] https://www.fda.gov/media/152432/download

[4] https://www.fda.gov/vaccines-blood-biologics/qa-comirnaty-covid-19-vaccine-mrna (February 8, 2022).

[5] https://www.fda.gov/media/144673/download , p. 7-8.

[6] https://www.fda.gov/media/146217/download, p. 49.

[7] https://www.cnn.com/2021/08/19/politics/roger-wicker-tests-positive-covid

[8] https://www.denverpost.com/2021/08/19/john-hickenlooper-covid-19-positive-congress/

[9] https://www.usnews.com/news/best-states/mississippi/articles/2022-06-13/us-sen-wicker-of-mississippi-again-tests-positive-for-covid

[10] https://www.reuters.com/world/us/us-homeland-security-secretary-tests-positive-covid-19-media-2021-10-19/

[11] https://www.thenewportbuzz.com/double-vaxxed-and-boosted-senators-warren-and-booker-test-positive-for-covid-19/33664

[12] https://www.defense.gov/News/Releases/Release/Article/2886520/statement-by-secretary-of-defense-lloyd-j-austin-iii-on-covid-status/

[13] https://www.defense.gov/News/Releases/Release/Article/3127969/statement-by-secretary-of-defense-lloyd-j-austin-iii-on-his-covid-status/

[14] https://www.npr.org/2022/03/13/1086362826/obama-has-tested-positive-for-covid

[15] https://www.wsj.com/articles/cia-director-william-burns-tests-positive-for-covid-19-11648745041

[16] https://www.justice.gov/opa/pr/statement-attorney-general-merrick-b-garland-1

[17] https://www.commerce.gov/news/press-releases/2022/04/statement-secretary-gina-m-raimondo

[18] https://www.npr.org/2022/04/07/1066212755/speaker-nancy-pelosi-has-tested-positive-for-covid

[19] https://www.usda.gov/media/press-releases/2022/04/09/statement-office-us-agriculture-secretary-tom-vilsack

[20] https://www.pbs.org/newshour/politics/vice-president-kamala-harris-tests-positive-for-covid-19

[21] https://www.maine.gov/governor/mills/news/governor-mills-announces-positive-covid-19-test-result-2022-04-28

[22] https://www.state.gov/secretary-blinken-tests-positive-for-covid-19/

[23] https://www.wsj.com/articles/new-york-gov-kathy-hochul-tests-positive-for-covid-19-11652044052

[24] https://www.nyc.gov/office-of-the-mayor/news/686-22/mayor-adams-launches-covid-19-booster-campaign-additional-flexibility-nyc#/0

[25] https://www.cnn.com/2022/05/09/politics/susan-rice-positive-covid

[26] https://news.delaware.gov/2022/05/16/governor-carney-tests-positive-for-covid-19/

[27] https://www.wdel.com/news/gov-carney-feeling-well-after-testing-positive-for-covid-19/article_91f0816c-d576-11ec-85bd-23d3731f5496.html

[28] https://www.nytimes.com/2022/06/01/us/politics/martin-walsh-positive-coronavirus.html

[29] https://abcnews.go.com/US/transportation-secretary-pete-buttigieg-tests-positive-covid-19/story?id=85088123

[30] https://www.hhs.gov/about/news/2022/06/13/statement-assistant-secretary-public-affairs-sarah-lovenheim-hhs-secretary-becerra-testing-positive-covid-19.html

[31] https://www.hhs.gov/about/news/2022/05/18/statement-from-assistant-secretary-for-public-affairs-sarah-lovenheim-on-hhs-delegation-traveling-in-berlin.html

[32] https://www.nih.gov/news-events/news-releases/niaid-director-fauci-tests-positive-covid-19

[33] https://www.cnbc.com/2022/07/27/as-more-people-report-covid-rebounds-after-paxlovid-experts-insist-cases-are-rare.html

[34] https://governor.nc.gov/news/press-releases/2022/06/20/governor-cooper-tests-positive-covid-19

[35] https://www.cnn.com/2022/07/10/politics/chuck-schumer-has-covid/index.html

[36] https://thehill.com/homenews/senate/3553488-blumenthal-second-democrat-to-miss-votes-with-covid-complicating-senate-agenda/

[37] https://www.politico.com/news/2022/03/30/biden-receive-second-covid-booster-00021667

[38] https://www.cnn.com/2022/06/13/americas/justin-trudeau-covid19-intl/index.html; https://www.businessinsider.com/justin-trudeau-got-moderna-booster-shot-after-his-astrazeneca-jab-2021-7; https://www.politico.com/news/2022/06/13/trudeau-positive-covid-00039165

[39] https://www.reuters.com/world/us/us-first-lady-jill-biden-tests-positive-covid-19-statement-2022-08-16/

[40] https://www.michigan.gov/whitmer/news/press-releases/2022/08/08/governor-whitmer-statement-on-testing-positive-for-covid-19

[41] https://www.michigan.gov/whitmer/news/press-releases/2021/11/05/photos-gov--whitmer-receives-safe-effective-covid-19-vaccine-booster

[42] https://www.governor.state.nm.us/2022/08/25/governor-tests-positive-for-covid-19/

[43] https://www.rosen.senate.gov/2022/09/06/senator-rosen-tests-positive-for-covid-19/

[44] https://twitter.com/EPAMichaelRegan/status/1574924863802056705

[45] https://www.cdc.gov/media/releases/2022/s1022-covid-director.html

[46] https://abcnews.go.com/Health/cdc-director-weighs-pandemic-bivalent-covid-shot-critically/story?id=90323875

[47] https://www.cdc.gov/media/releases/2022/s1031-covid-19-cdc-director.html

[48] https://www.ed.gov/news/press-releases/statement-acting-assistant-secretary-communications-and-outreach-kelly-leon-education-secretary-cardona-testing-positive-covid-19

[49] https://www.fda.gov/news-events/press-announcements/fda-commissioner-tests-positive-covid-19-experiencing-mild-symptoms

[50] https://www.colorado.gov/governor/news/9086-gov-polis-tests-positive-covid-asymptomatic-will-continue-duties-governor-while-working

[51] https://www.politico.com/news/2021/12/19/jared-polis-three-dose-vaccine-525532; https://www.deseret.com/utah/2021/12/14/22834582/colorado-governor-jared-polis-covid-19-emergency-over-unvaccinated-pandemic-vaccine-masks

[52] https://www.oregonlive.com/news/2022/11/gov-kate-brown-tests-positive-for-covid-19.html

[53] https://twitter.com/SenCortezMasto

[54] https://governor.wv.gov/News/press-releases/2023/Pages/Gov.-Justice-tests-positive-for-COVID-19---January-2023.aspx

[55] https://www.federalreserve.gov/newsevents/pressreleases/other20230118a.htm

[56] https://youtu.be/8AYqTgtIgLA

[57] Deborah Birx, *Silent Invasion: The Untold Story of the Trump Administration, Covid-19, and Preventing the Next Pandemic Before It's Too Late* (2022) pp. 440-441 and 446.

[58] https://www.marketwatch.com/articles/anthony-fauci-covid-19-biden-immunity-51658437525?siteid=nf-rss

[59] https://www.cdc.gov/mmwr/volumes/71/wr/mm7133e1.htm

[60] Massachusetts Department of Public Health COVID-19 Vaccine Data –Tuesday, July 5, 2022.

[61] FDA Briefing Document Moderna COVID-19 Vaccine, page 50, available at https://www.fda.gov/media/144434/download; FDA Briefing Document Pfizer-BioNTech COVID -19 Vaccine, page 49, available at https://www.fda.gov/media/144245/download, FDA Briefing Document Janssen Ad26.COV2.S Vaccine for the prevention of COVID-19, page 58 available at https://www.fad.gov/media/146217/download.

[62] Office of Management and Budget, Statement of Administration Policy, Jan. 30, 2023, available at https://www.whitehouse.gov/wp-content/uploads/2023/01/SAP-H.R.-382-H.J.-Res.7.pdf

[63] https://www.mass.gov/executive-orders/no-607-rescinding-executive-order-no-595